# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **Christiana Los** | : | **3:22 CV 123   (XXX)** |
| *Plaintiff* | : | |
| **v.** | : | |
| **Joseph Rondini** | : | |
| **Ernest Mulhern** | : | |
| **Frederick Quezada** | : | |
| | : | **January 24, 2022** |
| *Defendants.* | | |

## COMPLAINT

### Count One          42 U.S.C. Section 1983    (False Arrest     Franks Violation)

1.      This is an action for money damages to redress the deprivation by the defendants of rights secured to the plaintiff to be free from false arrest, unlawful detention, undue bodily restraint, and the denial of substantive due process rights afforded by the Constitutions and laws of the United States and the State of Connecticut.

2.      Jurisdiction of this Court is invoked under the provisions of Sections 1331, 1343 and 1367(a) of Title 28 and Section 1983 and 1988 of Title 42 of the United States Code, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and the laws of the State of Connecticut.

3.      During all times mentioned in this action, the plaintiff, Christiana Los, was, and still is, an adult citizen of the United States.

4.      Defendant Joseph Rondini, during all times mentioned in this action, was and is a duly appointed officer of the Greenwich  Police Department, acting in her official capacity.  He is sued, however, only in his individual capacity.

5.      Defendant Frederick Quezada, during all times mentioned in this action, was and is a duly appointed officer of the Greenwich Police Department, acting in his official capacity.  He is sued, however, only in his individual capacity.

6.      Defendant Ernest Mulhern, during all times mentioned in this action, was and is a duly appointed officer of the Greenwich Police Department, acting in his official capacity.  He is sued, however, only in his individual capacity.

7.      The defendants, during all times mentioned in this action, acted under color of law of the Constitutions and Statutes of the United States and State of Connecticut, the laws, charter, ordinances, policies, rules, regulations, customs, and usages, of the State of Connecticut and the City of Greenwich.

8.      Plaintiff is an operator of Clouds Vapors and Lounge, a "vape shop," located in Greenwich, CT.

9.      Prior to the summer of 2018, the store sold e-cigarette products.

10.     Around 2018 businesses in Greenwich, CT, other communities in Connecticut, and businesses in surrounding states were selling products derived from Hemp, which is the non-psychoactive cousin of Marijuana.

11.     Around 2018 online businesses were selling products derived from Hemp, which is the non-psychoactive cousin of Marijuana to residents of Greenwich, CT.

12.     Some of the stores that sell CBD include brick and mortar stores within Greenwich, CT and online businesses such as Amazon.

13.     The plaintiff investigated the legality of selling Hemp derived CBD  in Connecticut.

14.     In 2015, Connecticut Public Act 15-202, effective July 1, 2015,  excluded "industrial hemp" from the definition of Marijuana, under C.G.S. Section 21a-240(29).

15.     This statutory exclusion referenced in 7 USC 5940 defines industrial hemp as the plant Cannabis sativa L. and any part of such plant, whether growing or not, with a delta-9 tetrahydrocannabinol concentration "THC" of not more than 0.3 percent on a dry weight basis.

16.     In the summer of 2018, to supplement her e cigarette products, the plaintiff began selling industrial Hemp products that contain less than 0.3 percent THC, including hemp oil, hemp cbd oil, hemp cbd candies.

17.     The hemp derived  CBD products sold at Plaintiff's store were not derived from "marijuana," and did not meet Connecticut's statutory definition of "marijuana," and contained less than 0.3% delta-9 THC.

18.     On January 29, 2019, the defendants obtained an arrest warrant for the plaintiff which charged her with possession of marijuana and possession with intent to sell marijuana, in violation of C.G.S. Section 21a-277(b)(2)(A), 53a-48, and 21a-278a(b).

19.     The arrest warrant alleged:

        A..     Defendants  Mulhern and Rondini arranged for three separate undercover purchases from the plaintiff's business.

        B.      During the week January 6, 2019, the defendants, through an undercover, purchased a pod of liquid and a Juul electronic cigarette device, from  the co-owner of the vape shop.

    C.     Defendant Rondini tested a portion of the liquid which purportedly came up with a presumptive positive result for the presence of THC, using Reagent Test Kit 909.

    D.     During the week of January 13, 2019, Defendants  Mulhern and Rondini arranged for a second undercover purchase from the plaintiff's business, and purchased two pods, liquid "THC" and a glass jar of a green leafy substance from the plaintiff.

    E..     Defendant Rondini tested a portion of the liquid which purportedly came up with a presumptive positive result for the presence of THC, using Reagent Test Kit 909.

    F.     During the week of January 20, 2019, Defendants  Mulhern and Rondini arranged for a third undercover purchase from the plaintiff's business, and purchased two pods of a liquid substance and a glass jar of a green leafy substance from the plaintiff and her business partner.

    G.     Defendant Rondini tested a portion of the liquid which purportedly came up with a presumptive positive result for the presence of THC, using Reagent Test Kit 909.

21.    On January 31, 2019, the plaintiff was arrested.

20.    Upon information and belief, the plaintiff is the first individual to be charged with the sale of legal Hemp derived CBD products.

22.    The plaintiff was processed, held in custody and was required to post a $250,000 financial bond, and retain an attorney.

23.    The plaintiff was required to attend numerous court hearings, until August 2, 2021, when the prosecutor entered a nolle.

24.    On October 19, 2021, Connecticut Superior Court Judge John Blawie granted the return of the plaintiff's property and money that was previously erroneously ordered forfeited and destroyed.

25.    On January 7, 2019, the undercover purchased CBD Juul Pods by Emerald CBD, and not marijuana.

26.    The pods contained CBD liquid which is marketed and labeled as such.

27.    On January 15, 2019,  the undercover was shown lab tests which demonstrate that the hemp derived CBD products are below the 0.3% delta-9

THC threshold.  The undercover purchased hemp flower.  The plaintiff offered to provide the undercover with a receipt which was declined.

28.     The undercover inquired whether the CBD would show up on a drug screen. The plaintiff advised that if someone smoked a large amount of the CBD flower they could test positive from marijuana even though the products contained industrial hemp.

29.     On January 22, 2019, the undercover purchased CEIBA, a flower of the industrial hemp plant, from the distributor Marwen, which is a product of Northern Roots Nursery. The undercover was shown lab results that indicate that the products contain less than 0.3% delta-9 THC.  The undercover was asked to take a photograph of the lab results and declined.

30.     The CEIBA flower is the flower of the industrial hemp plaint was falsely alleged to contain illegal amounts of THC.

31.     The Narcopouch reagent 909 kits test for the presence of cannabinoids, which are a collection of compounds found in all cannabis sativa-L-plants.

32.     The Narcopouch reagent 909 could yield the presumptive presence of cannabinoids in Marijuana as well as lawful industrial hemp, as defined by 7 USC 5940.

33.     For almost four years before the investigation of the plaintiff, industrial hemp was excluded from the definition of marijuana, and the defendants knew, should have known and/or were obligated to know that the Narcopouch Reagent 909 field test could not differentiate between legal industrial hemp and unlawful marijuana, resulting in false positives for marijuana.

34.     As of October 1, 2018, the Narcopouch test kit 909 was replaced and no longer produced.

35.     The warrant contained numerous false statements and material omissions of fact that undermine a finding of probable cause.

36.     Paragraph 8 of the warrant states that the undercover purchased a Juul pod containing a liquid.

37.     Paragraph 8 of the warrant omitted the fact that the liquid was labeled a CBD Juul pod by Emerald CBD.

38.     Paragraph 13 of the arrest warrant states that the undercover purchased two pods with liquid substance and a green leafy substance.

39.     Paragraph 13  of the arrest warrant omitted the fact that when the liquid purchased on  January 15, 2019, the undercover was shown lab tests which indicate that the product had less than 0.3% delta-9 THC.

40      The warrant omitted the fact that all of the subject hemp-derived CBD products contain less than 0.3 % delta-9 THC, that the undercover purchased hemp flower, and that the plaintiff offered to provide the undercover with a receipt for the hemp-derived CBD products  which was declined.

41.     Paragraph 20 of the arrest warrant indicates that two pods contained liquid substance and a green leafy substance was purchased.

42.     Paragraph 20 of the arrest warrant did not indicate that the undercover purchased CEIBA, a flower of the industrial hemp plant, from the distributor Marwen, which is a product of Northern Roots Nursery, and that the undercover was shown lab results that indicate that the products contain less than 0.3% delta-9 THC.  The undercover was asked to take a photograph of the lab results and declined.

43.     The CEIBA flower was falsely alleged to be marijuana.

44.    The statement in the warrant that the purchased products were marijuana was false. The products did not contain "marijuana." The purchased products were hemp-derived CBD, and were/are legal.

45.    News articles that remain on the internet allege that the plaintiff unlawfully sold controlled substances near a school.

46.    An article in the Greenwich Times and Greenwich Free press includes the plaintiff's mug shot, supplied by the Greenwich Police Department, and statements made by police sources regarding her arrest. https://greenwichfreepress.com/police-fire/arrests-again-at-clouds-vape-lounge-in-byram-118272/.  As of January 23, 2022, this article remains accessible on the internet.

47.    The arrest warrant did not include the fact that the items purchased from the plaintiff's store were hemp-derived CBD.

48.    Other businesses in Greenwich, CT that sold CBD were not prosecuted in the same manner as Plaintiff.

49.    The defendants unlawfully caused the restraint of the physical liberty of the plaintiff.

50.    The defendants were reckless in that they included false information in the arrest warrant.

51.    The defendants recklessly omitted statements of material fact in the arrest warrant.

52.    The defendants conducted an investigation and drafted the arrest warrant affidavit with reckless disregard for the truth.

53.     Defendants falsely charged Plaintiff with violations of Connecticut criminal statutes.

54.     Defendants acted with malice when charging the Plaintiff.

55.     Defendants did not have probable cause to arrest and charge the Plaintiff.

56.     As a result of the Defendants' misconduct, criminal proceedings were commenced against the Plaintiff.

57.     The judge was misled into signing a warrant for the plaintiff due to the reckless omissions or false statements of material facts made by the defendants and those actions constituted a reckless disregard for the truth.

58.     If the above false statements were not included in the warrant for the plaintiff, the warrant would lack probable cause, a judge would not have signed a warrant, and the plaintiff would not have been arrested.

59.     If the warrant included that the items purchased were industrial hemp, the warrant would lack probable cause and the arrest warrant would not have been signed.

60.     The reckless actions of the defendants were unjustified, unreasonable, and unlawful.

61.     The defendants knew or should have known that severe emotional distress was the likely result of such conduct.

62.     As a direct and proximate result of the actions of the defendants, the Plaintiff suffered severe emotional distress including great humiliation, embarrassment, anxiety, stress, diminished personal reputation in the community,  diminished

business reputation in the community, emotional and mental upset, loss of sleep,
loss of business income, and loss of time from personal pursuits.

63.     The Plaintiff's distress was foreseeable and severe enough to cause severe
emotional distress.

64.     The acts of the defendants were reckless, wanton, willful, and malicious, and
outside the scope of their official employment.

65.     As a result of the conduct of the defendants, the plaintiff sustained injury and
damages.

**Count Two          Malicious Prosecution under 42 U.S.C. § 1983**

1-65.   Paragraphs one through sixty-five of Count One are hereby incorporated  as
paragraphs one through sixty -five of Count Two.

66.     Defendants' false and malicious charging resulted in criminal

proceedings against the Plaintiff.

67.     The charges were terminated in the plaintiff's favor.

**COUNT Three:          VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE**
**FOURTEENTH  AMENDMENT (42 U.S.C. 1983)**

1-65.   Paragraphs one through sixty-five of Count One are hereby incorporated as
paragraphs one through sixty-five of Count Three.

66.     Defendants were aware that local small businesses and large commercial operations sold the same or similar CBD products as the Plaintiff, yet the defendants did not pursue criminal charges against these entities.

67.     The plaintiff's business partner is of Hispanic descent.

68.     These actions violated Plaintiff's rights under the Fourteenth Amendment's equal protection clause.

*THE PLAINTIFF,*

*Christiana Los*

*By Her Attorney*

*/s/  Robert Berke*
_____
Robert M. Berke
640 Clinton Avenue
Bridgeport, CT 06605
203 332-6000
203 332-0661 fax
Bar No. 22117
robertberke@optonline.net

**JURY DEMAND**

The plaintiff requests a trial by jury.

By Her Attorney

**/s/   Robert Berke**

_____
Robert M. Berke
640 Clinton Avenue
Bridgeport, CT 06606
203 332-6000
203 332-0661 fax
Bar No. 22117
robertberke@optonline.net

Wherefore, the plaintiff claims:

a) Compensatory damages;

b) Punitive damages;

c) Attorney's fees;

e) Such other relief as deemed fair and equitable.

By Her Attorney

**/s/       Robert Berke**

_____
Robert M. Berke
640 Clinton Avenue
Bridgeport, CT 06606
203 332-6000

203 332-0661 fax
Bar No. 22117
robertberke@optonline.net